# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**TRACY YOUNG**                                               **PLAINTIFF**

**VS.**                        **CIVIL ACTION NO.: 3:15-cv-108-GHD-SAA**

**ISOLA, MISSISSIPPI, BY AND THROUGH ITS
MAYOR, BOBBIE MILLER; ISOLA POLICE
DEPARTMENT BY AND THROUGH ITS
CHIEF OF POLICE, CHARLES SHARKEY;
OFFICER MICHAEL KINGDOM AND JOHN
DOES 1-5**                                    **DEFENDANTS**

## MUNICIPAL DEFENDANT'S MEMORANDUM
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Municipal Defendant Town of Isola, Mississippi[1] ("the Town"), by and through its counsel of record, and respectfully submits its Memorandum in Support of Motion for Summary Judgment as to the lawsuit filed by Plaintiff Tracy Young ("Plaintiff" or "Young").[2] Undersigned counsel does **not** represent Non-Municipal Defendant Michael Kingdom, makes no arguments on behalf of Kingdom, and this Motion is submitted only on behalf of Municipal Defendant.

## I. INTRODUCTION

Plaintiff alleges she was verbally sexually harassed by former Isola police officer Michael Kingdom on three isolated occasions, once in February 2014, on an unknown date in October 2014, and lastly on October 17, 2014. The alleged harassment occurred while Plaintiff

---

[1] Municipal Defendant is the City of Isola, Mississippi, Mayor Bobby Miller in her official capacity and Police Chief Charles Sharkey in his official capacity. Plaintiff's Complaint does not name Mayor Miller or Chief Sharkey in their individual capacities. While the Complaint incorrectly identifies the Isola Police Department as a separate political subdivision, it is simply a department within the City of Isola, Mississippi. See *Potts v. Crosby Ind. Sch. Dist.*, 2005 WL 1527657 at *4-5 (S.D. Tex. June 28, 2005) (Police Department is not a separate legal entity and thus cannot be sued).
[2] See Complaint, Attached to Municipal Defendant's Motion as Exhibit "A".

was working as a clerk at a Double Quick Convenience Store outside the corporate limits of Isola.

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 ("Section 1983") of: (1) violation of right to procedural and substantive due process under the Fifth Amendment, (2) violation of right to procedural and substantive due process under the Fourteenth Amendment, (3) violation of the Sixth Amendment, (4) violation of equal protection under the Fourteenth Amendment, (5) conspiracy to interfere with civil rights under 42 U.S.C. § 1985 ("Section 1985"), (6) unreasonable seizure under the Fourteenth Amendment, (7) unreasonable seizure under the Fourth Amendment, and (8) cruel and unusual punishment under the Eighth and Fourteenth Amendments. Plaintiff asserts state law claims of: (9) assault, (10) violation of equal protection under the Mississippi Constitution, (11) violation of right against unreasonable seizure under Mississippi Constitution, (12) violation of right to procedural and substantive due process under the Mississippi Constitution, and (13) violation of right to be free from cruel and unusual punishment under the Mississippi Constitution.

Municipal Defendant is not liable for any of Plaintiff's federal claims under Section 1983 because at the time of Kingdom's alleged harassment of Plaintiff, he was outside his jurisdiction, was not acting under color of state law, and was instead acting as a private citizen. Plaintiff's constitutional claims also fail as a matter of law and on the merits. Plaintiff's Complaint does **<u>not</u>** name Mayor Bobbie Miller and Police Chief Charles Sharkey in their individual capacities, and accordingly, they have no individual liability, and Plaintiff's claims are only against the Town. Even assuming *arguendo* Miller and Sharkey were sued individually, they are entitled to qualified immunity. Plaintiff's state law claims are properly dismissed pursuant to the Mississippi Tort Claims Act because Kingdom was acting outside the course and scope of his

employment, and her claims also are dismissed pursuant to the Act's statutory exemptions.[3]  For the reasons discussed below, the Court should grant summary judgment as to all of Plaintiff's claims against Municipal Defendant.

## II. FACTS

### A.  Plaintiff's Employment at Double Quick Convenience Store in Humphreys County

Plaintiff began her employment as a clerk at the Double Quick convenience store ("the Store") on January 30, 2012.[4]  Plaintiff testified the Store on Highway 49 in Humphreys County is located outside the corporate limits of Isola, and she was instructed by her supervisor to refer any law enforcement matters to the Humphreys County Sheriff's Department.[5]

### B.  The Town of Isola Hires Michael Kingdom as a Police Officer

In 2013, Michael Kingdom was hired as a police officer by Isola Mayor Bobbie Miller ("Mayor Miller") to fill a vacancy in the Police Department.[6]  Kingdom's hiring was an emergency hire by the Mayor, and Kingdom's employment was later voted on and approved on November 15, 2013 by the Board of Aldermen.[7]  Kingdom previously had worked as an Isola police officer, and he submitted an application which included a separate list of his former law enforcement positions.[8]  It is undisputed that Kingdom was a certified law enforcement officer pursuant to Mississippi law.[9]  Pursuant to his employment, Kingdom was given a copy of the Town's Personnel Policies and Procedures Handbook, which contained the Town's written

---

[3] See Municipal Defendant's Answer and Affirmative Defenses, Attached to Municipal Defendant's Motion as Exhibit "B".
[4] See Tracy Young Deposition at 25, Attached to Municipal Defendant's Motion as Exhibit "C".
[5] See Young Deposition at 25, 36-37.
[6] See Mayor Bobbie Miller Deposition at 7-8, Attached to Municipal Defendant's Motion as Exhibit "D".
[7] See November 15, 2013 Minutes for Town of Isola, Attached to Municipal Defendant's Motion as Exhibit "E"; Miller Deposition at 7-9.
[8] See Resume of Michael Kingdom, Attached to Municipal Defendant's Motion as Exhibit "F"; Miller Deposition at 7, 9.
[9] See Law Enforcement Certification of Michael Kingdom, Attached to Municipal Defendant's Motion as Exhibit "G".

PD.19576399.1

policy against sexual harassment by any Isola employee.[10] Kingdom signed a form acknowledging having received the Handbook and agreed to comply with the Town's policies, including the one prohibiting sexual harassment.[11]

Mayor Miller conducted a background search of Kingdom by calling the law enforcement agencies listed, and was told Kingdom was a good worker.[12] She was not told anything negative about Kingdom.[13] During her calls, Mayor Miller was not informed of prior sexual harassment allegations against Kingdom, which included two lawsuits filed while Kingdom worked for the Hollandale Police Department.[14] Isola Police Chief Sharkey ("Chief Sharkey") conducted a separate background check verifying Kingdom's law enforcement certification with the Mississippi Board on Law Enforcement Officer Standards and Training, as well as verifying that he had no criminal history or convictions.[15] Chief Sharkey had no prior knowledge of Kingdom.[16]

## C. February 2014 Incident Between Plaintiff and Michael Kingdom

Plaintiff testified she was first sexually harassed by Kingdom in February 2014, but does not know the actual date.[17] Plaintiff first met Kingdom three months earlier, and initially he was friendly.[18] Plaintiff testified he would come into the Store, and have conversations with her about him being a church deacon and singing.[19] Plaintiff testified that Kingdom was not required

---

[10] See Town of Isola's Personnel Policies and Procedures Handbook, Attached to Municipal Defendant's Motion as Exhibit "H".
[11] See Signed Acknowledgment of Receipt of Town of Isola's Personnel Policies and Procedures Handbook, Attached to Municipal Defendant's Motion as Exhibit "I".
[12] See Miller Deposition at 9, 11-13.
[13] See Miller Deposition at 9, 11-13.
[14] See *Cosey et al. v. Michael Kingdom and City of Hollandale, Mississippi*, Civil Action No. 4:12-cv-15 (NBB)(DAS) and *Alexander v. Michael Kingdom and City of Hollandale, Mississippi*, Civil Action No. 4:13-cv-00256 (MPM)(JMV); Miller Deposition at 9, 11-13.
[15] See Chief Charles Sharkey Deposition at 9-10, Attached to Municipal Defendant's Motion as Exhibit "J".
[16] See Sharkey Deposition at 16.
[17] See Young Deposition at 20.
[18] See Young Deposition at 35-36, 38.
[19] See Young Deposition at 35-36.

to stop by the Store as part of his duties with the Town, but simply would show up.[20]  Because the Store is outside the corporate limits of Isola, Kingdom had no police authority while in the Store.  *See* MISS. OP. ATT'Y GEN., 1994 WL 410515 (July 7, 1994) (police officers do not have any authority outside the corporate limits of their municipality).  Plaintiff testified there was no arrangement by Double Quick to have Isola police officers stop by to check out the Store.[21]

On the unknown date in February 2014, Plaintiff testified that Kingdom entered the Store in the morning, in uniform, and when Plaintiff walked by him, he commented "[a]ll that ass, Goddamn.  I stick my tongue all in that."[22]  When Plaintiff confronted him and asked him what he said, Kingdom responded "[n]othing.  I didn't say nothing", and Plaintiff walked away.[23] There was no one else in the Store at the time.[24]

Plaintiff reported the incident to her Store Manager, Sonya Barnes, and at Barnes' request, hand wrote a statement about the incident.[25]  Plaintiff gave the statement to the Store Manager.[26]  Plaintiff testified she does not have a copy of the statement.[27]  It was Plaintiff's belief that the Store Manager would pass the statement onto the Double Quick main office, and she was relying on Double Quick to inform the Town of Isola and the Mayor about her complaint against Kingdom.[28]  However, Plaintiff  testified she has no facts or evidence that actually happened.[29]  Plaintiff testified her Store Manager later told her that the Double Quick main office had no record of ever having received her complaint.[30]

---

[20] See Young Deposition at 43-44.
[21] See Young Deposition at 44.
[22] See Young Deposition at 40, 101.
[23] See Young Deposition at 40-41, 43, 101.
[24] See Young Deposition at 40.
[25] See Young Deposition at 51-52.
[26] See Young Deposition at 53.
[27] See Young Deposition at 53.
[28] See Young Deposition at 53-54.
[29] See Young Deposition at 53-55.
[30] See Young Deposition at 64.

Plaintiff testified at her deposition that she never contacted Mayor Miller to complain about Kingdom's conduct on this occasion, and in fact, has never talked with or communicated with the Mayor in any manner concerning any of her complaints about Kingdom.[31] Plaintiff testified she never went to the Isola Police Department, and never said anything to Chief Sharkey about any of her complaints regarding Kingdom, even when she had the opportunity to talk with him one-on-one.[32] She testified she has no facts or evidence that Chief Sharkey had any knowledge of Kingdom's actions.[33]

Plaintiff's cousin is Isola Alderman Lawrence Anderson.[34] Plaintiff testified she told him about the incident.[35] Anderson testified he told Plaintiff that "maybe he [Kingdom] might be just playing" but said to her that he would bring it to the attention of the Board.[36] Anderson claims he brought it up at the next Board meeting following the incident, but says no action was taken.[37] For purposes of summary judgment only, Municipal Defendant will assume Anderson made a statement, but Mayor Miller testified all she heard Anderson say was that there was "going to be a lawsuit, and his voice was trailing on off. And he said, 'Wait a minute. Let me hush. Leave that alone.'"[38] Alderwoman Gwendall Moffett White, who at the time was serving as the Ward 4 Alderwoman, testified she does not recall Anderson ever saying anything about Kingdom harassing Young, which is something she would have remembered.[39]

Plaintiff's Complaint alleges that after the February incident, Mayor Miller personally approached her "with the sole purpose of asking or requesting Plaintiff to reconsider her complaint and attempted to convince Plaintiff that she may have been confused about the

---

[31] See Young Deposition at 55, 57-58.
[32] See Young Deposition at 56-57.
[33] See Young Deposition at 57.
[34] See Young Deposition at 59-60.
[35] See Young Deposition at 60.
[36] See Lawrence Anderson Deposition at 27, Attached to Municipal Defendant's Motion as Exhibit "K".
[37] See Anderson Deposition at 27, 32.
[38] Miller Deposition at 17.
[39] See Gwendall Moffett White Deposition at 40, Attached to Municipal Defendant's Motion as Exhibit "L".

intentions of Officer Kingdom" and alleges at this meeting the Mayor sought to intimidate her.[40]
However, in her deposition, Plaintiff testified that this never actually happened, she has never
spoken with the Mayor, and instead, she learned from a co-worker that the Mayor had come by
the store to talk with her, but it was Plaintiff's day off, and accordingly, the Mayor was not able
to speak with her.[41]

### D.    The Incident Between Plaintiff and Michael Kingdom on an Unknown Date in October 2014[42]

Plaintiff testified that for approximately eight or nine months, she had no other issues
with Kingdom harassing her at the Store, until a second incident she believes occurred sometime
between October 9 and October 17 of 2014.[43]  Plaintiff testified she was walking past Kingdom
in the Store when he grabbed her arm to get her attention and told her in reference to her husband
"I bet that nigger ain't hitting that right." [44]  Plaintiff pulled her arm away and told Kingdom
"You don't know what my man doing." [45]  Plaintiff testified that Kingdom told her he did not
want to hear about her husband, Plaintiff told him "Or what?", and that was the extent of the
incident.[46]  Plaintiff testified that she did not sustain any physical injury or bruising from
Kingdom grabbing her arm, there was no law enforcement reason for him to have touched her,
and he was not trying to handcuff her or arrest her.[47]  Plaintiff testified she considered him
touching her a criminal act. [48]  Anderson testified he learned of the second incident from Plaintiff

---

[40] See Exhibit "A" at ¶¶ 30-31.
[41] See Young Deposition at 58-59.
[42] This second incident was not asserted in Plaintiff's Complaint, and when requested in written discovery to list all such incidents, Plaintiff's December 30, 2015 response only referenced the incidents in February 2014 and on October 17, 2014, and never supplemented discovery in this regard.  The first mention of this purported second incident occurred during Plaintiff's May 12, 2016 deposition.
[43] See Young Deposition at 67-69.
[44] See Young Deposition at 45-46, 102.
[45] See Young Deposition at 46.
[46] See Young Deposition at 46.
[47] See Young Deposition at 46-47.
[48] See Young Deposition at 47.

and informed the Board.[49]  Anderson testified that the second time he told the Board about his cousin's complaint against Kingdom, Board members conducted an investigation.[50] Alderwoman Gwendall Moffett White testified another impetus to investigate was one of her constituent's belief that Kingdom was not actually certified.[51]  White testified her investigation was to check on Kingdom's qualifications, his certification and anything that could be harmful to the Town and its citizens.[52]  White spoke to Kingdom concerning allegations of sexual harassment against him by Plaintiff, and he denied that he had harassed Plaintiff, but that he was aware she had made the accusation.[53]  Mayor Miller testified she also spoke with Kingdom.[54] White testified that her investigation, which included calling up law enforcement agencies where Kingdom had worked, did not uncover anything of concern.[55]

### E.    The Incident Between Plaintiff and Michael Kingdom on October 17, 2014

The final incident between Plaintiff and Kingdom occurred on October 17, 2014.[56] Plaintiff was helping a male customer at the register and Kingdom walked into the Store and waited by the ice machine until the man walked out.[57]  Kingdom walked over to the register and told Plaintiff "What I tell you about having mother-fucking niggers in your face?"[58]  Plaintiff testified she started laughing at Kingdom and  told him "I ain't worried about you."[59]  He said "All right.  Let me catch you with another one in your face" and walked out of the Store.[60]

---

[49] See Anderson Deposition at 27.
[50] See Anderson Deposition at 32.
[51] See White  Deposition at 12.
[52] White Deposition at 11-12.
[53] White Deposition at 34-35.
[54] See Miller Deposition at 28.
[55] See White Deposition at 13.
[56] See Young Deposition at 102.
[57] See Young Deposition at 102.
[58] See Young Deposition at 102-103.
[59] See Young Deposition at 70, 103.
[60] See Young Deposition at 70, 103.

PD.19576399.1

Three days later, on October 20, 2014, Plaintiff went to the Humphreys County Sheriff's Department in Belzoni and made a criminal complaint to press criminal charges against Kingdom.[61] A sheriff's Department Officer took Plaintiff's statement regarding the October 17, 2014 incident and included it in the Incident Report.[62] Plaintiff testified she also spoke with the Humphreys County Sheriff.[63] Plaintiff testified she wanted the Sheriff's Department to arrest Kingdom, and that is what she thought they were going to do, but never followed up to find out the status of her complaint.[64] Plaintiff testified the Sheriff's Department obtained a surveillance video from the Store showing the October 17, 2014 incident.[65] Chief Sharkey went with the Sheriff to view the video at the Double Quick.[66] Chief Sharkey testified he watched the tape, but there was no audio, and all he could see was Kingdom in the Store with Plaintiff, and that Plaintiff was laughing.[67] The Sheriff's Department did not pursue any criminal charges against Kingdom.[68]

Plaintiff testified that following the October 17, 2014 incident, she had no further contact with Kingdom in the Store because she requested a morning shift from her employer, and Kingdom worked nights.[69] Plaintiff testified she did not sustain any significant loss of income from the shift change.[70] Kingdom subsequently resigned and Plaintiff is aware he has not been employed by the town for well over a year.[71] Plaintiff testified she has never sought any medical

---

[61] See Humphreys County Sheriff's Department Incident Report, Attached to Municipal Defendant's Motion as Exhibit "M"; Young Deposition at 11-12, 76.
[62] See Young Deposition at 15-16.
[63] See Young Deposition at 15-16.
[64] See Young Deposition at 18, 72-73.
[65] See Young Deposition at 18-19.
[66] See Sharkey Deposition at 20.
[67] See Sharkey Deposition at 20.
[68] See Young Deposition at 73.
[69] See Young Deposition at 79-80.
[70] See Young Deposition at 81-82.
[71] See Miller Deposition at 19-20; Sharkey Deposition at 21; Young Deposition at 88.

PD.19576399.1

treatment for the emotional injuries claimed in her Complaint because since Kingdom left Isola, she has been "stress-free."[72]

### III. ARGUMENT AND AUTHORITY

**A.    Standard of Review**

To avoid summary judgment, a plaintiff must produce admissible evidence of specific facts which indicate that a genuine issue of material fact actually exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) (if a plaintiff lacks evidence sufficient to create a genuine issue of fact in support of a necessary element of a claim or claims, then summary judgment is appropriate against plaintiff on that claim). *Hypes v. First Commerce Corporation*, 134 F.3d 721, 725 (5th Cir. 1998). While the Court may not make credibility determinations or weigh the evidence, pursuant to *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097 (2000), "Reeves does not require [the Court] to reject the plainly obvious." *Montemayor v. City of San Antonio*, 276 F.3d 687, 693 (5th Cir. 2001). The burden on the nonmoving party is to do more than simply show there is some metaphysical doubt as to the material facts. *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 81 (5th Cir. 1995).

**B.    Federal Claims**

**1.    Municipal Defendant Cannot be Liable Pursuant to Section 1983 Because Michael Kingdom was Not Acting Under Color of State Law When He Harassed Plaintiff at the Double Quick Convenience Store**

As a prerequisite to establishing a Section 1983 claim, a Plaintiff must establish "(a) that the defendants were acting under color of state law, and (b) that while acting under color of state law, the defendants violated rights of the plaintiff that are protected by the United States Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir. 1984). Here, the Town is not liable for Kingdom's

---

[72] See Young Deposition at 89-90.

- 10 -

alleged harassment of Plaintiff because, even if the harassment did occur, Kingdom was not acting under color of state law, but instead was acting as a private citizen. *See E.D. ex rel. E.L v. Pugh*, 2012 WL 2177625, *5 (S.D. Miss. June 13, 2012) (finding where officer's alleged sexual misconduct was not done under color of state law, state entity could not be held liable).

"A person acts under color of law if he misuses power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464 (5th Cir. 2010). "Acts of officers performing their official duties are included, regardless of whether or not they hew to the line of their authority or overstep it," but "acts of officers in the ambit of their personal pursuits are generally excluded." *Pugh*, 2012 WL 2177625 at *3. The Fifth Circuit has held that to determine whether an officer is acting under color of state law, "courts must consider: (1) whether the officer misused or abused his official power, and (2) if there is a nexus between the victim, the improper conduct, and the officer's performance of official duties." *Bustos*, 599 F.3d at 464 (internal citations omitted). If at the time of the alleged constitutional violation an officer is in pursuit of "personal objectives without using his official power as a means to achieve his private aim, he is not acting under color of state law." *Id.*

In this instance, Plaintiff has testified that Kingdom had no duty-related reason to be at the Store, and she thinks his agenda was to sexually harass her.[73] As such, there was no nexus between Plaintiff, Kingdom's pursuit of his personal objective, and the performance of his official duties on behalf of the Town. *See Townsend v. Moya*, 291 F.3d 859 (5th Cir. 2002) (Prison guard's action in cutting inmate with a knife was not "under color of state law" for purposes of § 1983; guard was pursuing a private aim and not acting by virtue of state authority); *Delcambre v. Delcambre,* 635 F.2d 407, 408 (5th Cir. 1981) (police chief was not acting under

---

[73] See Young Deposition at 43-44.

- 11 -

color of state law, even though he was on duty and at the police station, when he assaulted his sister-in-law over personal arguments about family matters); *Garner v. Wallace*, 139 F. Supp. 2d 801, 804-05 (E.D. Tex. 2001) (city not liable under Section 1983 and police officer's actions not under color of state law where it involved a personal dispute and occurred outside his territorial jurisdiction).

It is undisputed that the Store was outside the corporate limits of Isola, and as a matter of state law, Kingdom had no police authority while at the Store.[74] This further renders his conduct toward Plaintiff as not being under color of state law. *See Garner*, 139 F. Supp.2d at 804-805; *Askew v. Bloemker,* 548 F.2d 673, 677 (7th Cir. 1976) (concluding that the individual could not have acted under color of state law because he was outside of his jurisdiction); *Rodriguez v. Milwaukee,* 957 F.Supp. 1055, 1062–63 (E.D.Wis.1997) (officers outside their jurisdiction were not acting under color of state law). While Plaintiff may have a state law claim against Non-Municipal Defendant Kingdom in his individual capacity for his alleged conduct, all of Plaintiff's Section 1983 claims against Municipal Defendant are properly dismissed. While the lack of state action is dispositive as to all of Plaintiff's constitutional claims against Municipal Defendant, such claims also fail independently.

### 2. Plaintiff's Fifth Amendment Due Process Claim Against Municipal Defendant is Properly Dismissed as a Matter of Law

Plaintiff asserts Municipal Defendant purportedly violated her Fifth Amendment right to "procedural and substantive due process of law" but the actual basis of the claim is never stated.[75] Whatever Plaintiff's purported basis for the claim, it fails as a matter of law. The Fifth Amendment's due process applies only to violations of constitutional rights by the United States or a federal actor. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). It is

---

[74] See Young Deposition at 25, 36-37. *See* MISS. OP. ATT'Y GEN., 1994 WL 410515 (July 7, 1994) (police officers do not have any authority outside the corporate limits of their municipality).
[75] See Exhibit "A" at ¶ 21(c) (Complaint).

PD.19576399.1

undisputed that the Town, and all individuals involved in this matter are **not** federal actors and Plaintiff has not alleged otherwise.[76]  As such, dismissal of this claim is proper.

### 3. No Basis to Plaintiff's Fourteenth Amendment Due Process Claims Against Municipal Defendant

Plaintiff's Fourteenth Amendment due process claims, as previously addressed in regard to all her claims brought under Section 1983, fail for lack of state action.  It also fails because Kingdom's alleged isolated incidents of sexual harassment against Plaintiff are insufficient to state a claim against Municipal Defendant.  The due process clause of the Fourteenth Amendment includes a substantive right to be free from abusive use of government power without any legitimate law enforcement objective.  *See e.g.*, *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 664 (1986).  A government official's abuse of power must rise to the conscious-shocking level to be actionable under the Fourteenth Amendment.  *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1716–17.  What shocks the conscious depends on the circumstances of each case.  *Id*. at 1718–19.

In this instance, Plaintiff was subjected to verbal sexual harassment.  Federal courts in Mississippi and in other jurisdictions have held that such verbal harassment is insufficient to state a claim under the due process clause of the Fourteenth Amendment.  In *Chestang v. Alcorn State Univ.*, 820 F. Supp. 2d 772 (S.D. Miss. 2011), the District Court held that verbal sexual harassment, including one incident where the public employee "rubbed against [Chestang's] body . . . does not rise to the level of activity that 'shocks the conscience' such that it violates substantive due process."  *Id*. at 779-780.  Other jurisdictions are in accord.  *See Klein v. McGowan*, 198 F.3d 705, 710 (8th Cir.1999) (repeated instances of verbal sexual harassment in workplace did not rise to level of shocking the conscience to establish due process violation);

---

[76] See Young Deposition at 93.

*Abeyta v. Chama Valley Indep. Sch. Dist., No.19*, 77 F.3d 1253, 1255–56 (10th Cir.1996) (holding that verbal sexual harassment does not support a section 1983 claim).

As noted in *Chestang*, while a "substantive due process right to bodily integrity clearly exists, the Fifth Circuit and other circuits have recognized that only the most egregious misconduct violates that right." 820 F. Supp. 2d at 780. Cases where such a claim is recognized go far beyond what exists in the instant case. *See Rogers v. City of Little Rock,* 152 F.3d 790, 796 (8th Cir. 1998) (police officer violated a woman's substantive due process right to bodily integrity when he used his position of power as a police officer to rape her); *Jones v. Wellham,* 104 F.3d 620, 628 (4th Cir. 1997) (In a case involving rape by a police officer after a traffic stop, the Fourth Circuit described the violated right as a due process right); *Plumeau v. School District #40 County of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997) (public school students have a substantive due process right not to be sexually abused by school employees at school). As noted by the Southern District of Mississippi in *Chestang,* incidental non-injurious contact during verbal sexual harassment does not alter the analysis finding no due process violation, and such is the same in regard to Plaintiff's claim that Kingdom grabbed her arm, which did not cause any injury or bruises.[77]  *See also Lillard v. Shelby County Board of Education,* 76 F.3d 716, 726 (6th Cir.1996) ( a single slap, which did not result in physical injury, even if given for no legitimate purpose, does not rise to the level of a constitutional violation and "it is simply inconceivable that a single slap could shock the conscience.").

Other than a single bare mention in her Complaint[78], it is unclear what the basis is for Plaintiff's purported procedural due process claim, and Plaintiff's testimony offers no basis as well. As discussed above, because there was no state action, this claim fails. *See Amin v. Estate*

---

[77] See Young Deposition at 47.
[78] See Exhibit "A" at ¶ 21(c) (Complaint).

*of Stonebreaker,* 1996 WL 44200, at *2 (E.D. La. Feb. 2, 1996) (a § 1983 action alleging a procedural due process clause violation requires proof of state action).

### 4. Plaintiff's Sixth Amendment Claim Against Municipal Defendant is Properly Dismissed as a Matter of Law

Plaintiff alleges she is entitled to damages for a deprivation of Sixth Amendment rights.[79] However, nowhere in her Complaint or in her deposition does Plaintiff make any allegations that she was deprived of her right to effective counsel, a speedy and public jury trial or any other right protected by the Sixth Amendment. *See Turner v. Rogers*, 564 U.S. 431, 131 S. Ct. 2507, 2510 (2011) (The Sixth Amendment grants an indigent criminal defendant the right to counsel . . . but does not govern civil cases."); *Rynearson v. United States*, 2013 WL 11309342, at *11 (W.D. Tex. Sept. 30, 2013), *aff'd*, 601 F. App'x 302 (5th Cir. 2015) ("The Sixth Amendment is also inapplicable to the Plaintiff's *civil* cause of action because it affords protection for a criminal defendant during *criminal* prosecutions."). In her deposition, Plaintiff testified she was never arrested or had any charges brought against her.[80] Dismissal of this claim is proper.

### 5. No Basis to Plaintiff's Fourteenth Amendment Equal Protection Claim Against Municipal Defendant

Plaintiff alleges Municipal Defendant violated her "right to equal protection of the laws of the United States of America pursuant to the Fourteenth Amendment to the Constitution of the United States of America" and brings this claim pursuant to Section 1983.[81] "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), or any other suspect classification. As a prerequisite to an

---

[79] See Exhibit "A" at ¶ 34(a) ( Complaint).
[80] See Young Deposition at 92.
[81] See Exhibit "A" at ¶ 21(a) ( Complaint).

PD.19576399.1

equal protection claim, a plaintiff must prove that similarly situated individuals were treated differently." *Beeler v. Rounsavall,* 328 F.3d 813, 816 (5th Cir. 2003).

It is undisputed that Plaintiff and all of the primary players in this matter are African-American. Plaintiff testified she is not alleging she was discriminated against on the basis of her race, and has no facts or evidence that she was treated differently than anyone else because of the color of her skin.[82] For the reasons discussed, Plaintiff's equal protection claim is properly dismissed.

### 6. No Basis to Plaintiff's Section 1985 Conspiracy Claim Against Municipal Defendant

Plaintiff's Complaint alleges that "all Defendants named and unnamed, and their agents, representatives and employees did conspire to deprive the Plaintiffs [sic], of the rights, privileges, and immunities guaranteed by the Constitution" and brings her claim pursuant to Section 1985.[83] Plaintiff's claim fails as a matter of law.

The Supreme Court, the Fifth Circuit, and other federal courts uniformly have held that § 1985(3) applies only to conspiracies against protected classes of people. It does not, as Plaintiff would have this Court believe, create a federal cause of action wherever there is an alleged tort against a single individual that involves two or more defendants. In *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Supreme Court explained that Congress did not intend § 1985(3) to create a general federal tort law. *Id*. at 101-02 . The Court declared "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that **there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions**." *Id*. (emphasis added). The Fifth Circuit is in accord that to bring such a claim, a plaintiff must have proof of racial animus. *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340,

---

[82] See Young Deposition at 91-92.
[83] See Exhibit "A" at ¶¶ 24-25 (Complaint).

345 (5th Cir. 1981) ("[T]his court has limited cases brought under Section 1985(3) to those alleging racial or class-based animus.").

In this case, as discussed above, all of the parties involved are African-American. Plaintiff testified she was not subjected to any actions on the basis of her race, and as such, cannot establish any "racial or class-based animus" and summary judgment is proper as to this claim.

### 7. Plaintiff's Fourteenth Amendment Unreasonable Seizure Claim Against Municipal Defendant is Properly Dismissed as a Matter of Law

While acknowledging she was never arrested, handcuffed, charged or injured[84], Plaintiff nonetheless claims she was subjected to an unreasonable seizure under the Fourteenth Amendment.[85] However, her claim is foreclosed by the Supreme Court's holding in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807 (1994), and is properly dismissed as a matter of law.

In *Albright*, the Court held that there was no Fourteenth Amendment "liberty interest" or substantive due process right to be free from criminal prosecution unsupported by probable cause. *Id.* at U.S. 270-271. The *Albright* Court held that the plaintiff's claims based on prosecution without probable cause were best analyzed under the Fourth Amendment. *Id.* at 274. *See Cuadra v. Houston Indep. School Dist.*, 626 F.3d 808, 814 (5th Cir. 2010); *Reynolds v. New Orleans*, 2008 WL 853591, *5 (5th Cir. April 1, 2008) (affirming district court's dismissal of plaintiff's Fourteenth Amendment claim based on his arrest and detention).

### 8. No Basis to Plaintiff's Fourth Amendment Unreasonable Seizure Claims Against Municipal Defendant

Plaintiff testified she was not arrested, handcuffed, charged or injured. As detailed above, to the extent that Michael Kingdom briefly grabbed her arm on the one occasion, he was not acting under color of state law, and his personal conduct does not constitute state action for

---

[84] See Young Deposition at 47, 92.
[85] See Exhibit "A" at ¶ 21(b) ( Complaint).

- 17 -

purposes of her Fourth Amendment claim. To the extent Plaintiff is asserting the grabbing of her arm as the basis of an excessive force claim under the Fourth Amendment, her claim fails.

"To state a Fourth Amendment excessive force claim, a plaintiff must allege the existence of more than *de minimis* injury." *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 712 (W.D. Tex. 2015). The Fifth Circuit recently affirmed a district court's grant of summary judgment on a plaintiff's excessive force claim, where the summary judgment record showed the plaintiff "suffered abrasions to his hands and knees, some pain in his back and neck, and unspecified problems with his asthma." *Brooks v. City of West Point, Miss.*, No. 14-60357, 2016 WL 556360, at *3 (5th Cir. Feb. 11, 2016).

In this case, Plaintiff testified she did not sustain **any** injuries or bruises from Kingdom grabbing her arm, did not require any medical attention and was not physically hurt in any manner.[86] Her lack of injuries of any sort is insufficient to give rise to a constitutional claim for excessive force, and summary judgment is proper.

9.  **No Basis to Plaintiff's Eighth and Fourteenth Amendment Claims Against Municipal Defendant for Violation of Right to be Free From Cruel and Unusual Punishment**

Plaintiff's claim for damages for purported "cruel and unusual punishment" under the Eighth and Fourteenth Amendments simply has no factual or legal basis.[87] The protections of the Eighth Amendment apply "only to convicted prisoners and not to pretrial detainees." *Scott v. Moore*, 85 F.3d 230, 234-35 (5th Cir. 1996); *Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir. 1986.) *See also Ingraham v. Wright*, 430 U.S. 651, 664 (1977) (the Eighth Amendment protects only those who have been convicted of a crime). The Due Process Clause of the Fourteenth Amendment accords pretrial detainees rights not enjoyed by convicted inmates under the Eighth Amendment prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520,

---

[86] See Young Deposition at 47, 87-88.
[87] See Exhibit "A" at ¶¶ 21(d), 34(a) ( Complaint).

535-39 (1979). "The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment," while "[t]he constitutional rights of a pretrial detainee ... flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth,* 74 F.3d 633 (5th Cir. 1996) (*en banc*). Because Plaintiff was never arrested, much less charged or convicted, she is neither a convicted prisoner nor a pretrial detainee, and these claims are properly dismissed.[88]

### 10. Mayor Bobbie Miller and Police Chief Charles Sharkey are Sued in Their Official Capacity Only and Have No Individual Liability or Alternatively are Entitled to Qualified Immunity

Plaintiff's Complaint does **not** state anywhere that Mayor Miller and Chief Sharkey are sued in their individual capacities, and does **not** name them at all in the specific listing of Defendants to Plaintiff's lawsuit, only identifying Municipal Defendant Town of Isola, the non-political subdivision of Isola Police Department[89], and Non-Municipal Defendant Michael Kingdom.[90] The style of the Complaint only identifies the Mayor and Chief as representatives of the Town and Police Department, respectively, and only identifies Mayor Miller as the Chief Executive of Isola, "[a]cting in her capacity as an elected official . . . ."[91] If no capacity is specified in a complaint, then the suit is presumed to be an official capacity action only. *Hafer v. Melo*, 112 S. Ct. 358, 361 n. 1 (1991); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which [he] is suing the defendant, we interpret the complaint as including only official-capacity claims.").

As such, Mayor Miller and Chief Sharkey are sued in their official capacities only. A suit against a governmental officer in his or her official capacity is the same as a suit against the entity of which the officer is an agent. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th

---

[88] See Young Deposition at 92.
[89] See footnote 2.
[90] See Exhibit "A" at ¶¶ 2-3 (Complaint).
[91] See Exhibit "A" at ¶ 30 (Complaint).

Cir. 1999).  Accordingly, the only Defendants are Municipal Defendant Town of Isola, and Non-Municipal Defendant Michael Kingdom, who is not represented by undersigned counsel.  Even assuming *arguendo* that Mayor Miller and Chief Sharkey were sued individually, they are entitled to qualified immunity and summary judgment in that their actions were objectively reasonable in light of clearly established law at the time of the official's conduct.  *Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005).  In the case of Chief Sharkey, Plaintiff expressly testified Chief Sharkey did nothing wrong and had nothing to do with Kingdom's harassment of her.[92]  The basis of Plaintiff's argument against Mayor Miller is "I felt like as Mayor she's over everything", which is the same as *respondeat superior.  Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) ("[t]here is no vicarious or *respondeat superior* liability of supervisors under section 1983.").

### 11. Plaintiff Cannot Establish a Policy on Which to Base Section 1983 Liability Against Municipal Defendant Town of Isola

To establish a claim against Municipal Defendant under Section 1983, Plaintiff must establish a constitutional violation and a policy that led to the violation.  Here, as discussed above, there is no constitutional violation and because of that, there is no municipal liability.  Even assuming *arguendo* there was a violation, there was no policy that caused it.

It is undisputed that the Town had an express written policy prohibiting sexual harassment by its employees, and that Kingdom had been instructed regarding that policy.[93]  Plaintiff's Complaint alleges that Kingdom's sexual harassment and assault on Plaintiff was "the result of the policy, practice and custom of the Isola, Mississippi Police Department and City of Isola, Mississippi" and specifically, that this consisted of a failure to train, supervise and

---

[92] See Young Deposition at 90-91.
[93] See Exhibit "H" (Town of Isola's Personnel Policies and Procedures Handbook); Exhibit "I" (Signed Acknowledgment of Receipt of Town of Isola's Personnel Policies and Procedures Handbook).

discipline its police officers, and failure to exercise reasonable care in the hiring of police officers.[94]

It is well-established that a city is not liable under Section 1983 on the theory of *respondeat superior* or vicarious liability, and Municipal Defendant cannot be held liable solely because it may have employed a tortfeasor, or for the actions of Michael Kingdom in violating the Town's policy against sexual harassment. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847-48 (5th Cir. 2009); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006). Rather, to establish municipal liability under Section 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) that was the moving force behind the violation of a constitutional right. *Id.* An official policy usually exists in the form of written policy statements, ordinances, or regulations, but also can arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*)).

It is insufficient for Plaintiff to rely on her own allegations to establish a municipal policy, but instead, she "must show a pattern of similar incidents in which citizens were injured or endangered by the policy in question and such incidents had occurred for so long or so frequently that it could be considered an expected and accepted policy of city employees." *Cunningham v. City of West Point*, 2009 WL 3163331, *2 (N.D. Miss. Sept. 29, 2009). "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). *See also Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) ("A pattern also requires sufficiently numerous prior incidents, as opposed to isolated instances."); *McConney v. City of Houston,* 863

---

[94] See Exhibit "A" at ¶¶ 17, 26-27 (Complaint).

F.2d 1180, 1184 (5th Cir. 1989) (isolated incidents insufficient to establish a pattern of violations). The three isolated incidents over the course of nine months is insufficient.

Inadequacy of training can serve as the basis for municipal liability under Section 1983, but only if it amounts to a deliberate indifference to the rights of individuals who come into contact with the police. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The Fifth Circuit holds that if the training of law enforcement officers meets state standards, there can be no cause of action for a failure to train. *O'Neal v. City of San Antonio*, 2009 WL 2734735, *7 (5th Cir. Aug. 31, 2009) (no cause of action for failure to train if officer meets minimum state mandated training); *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). Plaintiff's failure to supervise claim is in actuality no different from his failure to train claim, and is treated no differently by the Fifth Circuit. *See Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 383 n. 34 (5th Cir. 2005) ("Plaintiffs' attempt to distinguish the present case as involving supervision as opposed to training is unpersuasive.").

Plaintiff testified that she has no facts, evidence or knowledge as to the training or supervision provided by the Town to its Police Officers, and no evidence that Michael Kingdom was not properly trained or supervised.[95] It is undisputed that at the time of his employment by the Town, Kingdom was certified as a Law Enforcement Officer under Mississippi law and completed the state mandated law enforcement training.[96] Chief Sharkey had confirmed Kingdom's certification with the Mississippi Board on Law Enforcement Officer Standards and Training.[97] *See Abshure v. Prator*, 2010 WL 3278256, *2 (5th Cir. Aug. 16, 2010) (motion to dismiss failure-to-train claim granted because Sheriff's employees met Louisiana's legal minimum for training). As noted above, the isolated incidents involving Plaintiff and Kingdom,

---

[95] See Young Deposition at 95-96.
[96] See "Exhibit "G" (Law Enforcement Certification of Michael Kingdom).
[97] See Sharkey Deposition at 9-10.

occurring months apart, are not "the persistent, often repeated, constant violations that constitute custom and policy." *Fraire*, 957 F.2d 1268.

It is undisputed that Municipal Defendant conducted a background check of Kingdom as part of the hiring process, as well as afterward. To the extent Plaintiff alleges the background check was inadequate or Municipal Defendant's investigation of her allegations was lacking, negligence is not actionable under Section 1983. *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (*en banc*) ("A 'gross' error is still only an error, and an error is not an abuse of power. Since an error by a government official is not unconstitutional, it follows that 'gross negligence' is not a sufficient basis for liability."). *See also Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001) (finding that city's failure to investigate and discipline in that case did not rise to the level of custom or policy, noting that "it is nearly impossible to impute lax disciplinary policy to the city without showing a pattern of abuses that transcends the error made in a single case"); *DeShay v. Bastrop Indep. Sch. Dist.*, 180 F.3d 262, 1999 WL 274606, *2 (5th Cir. 1999) (rejecting plaintiffs' assertion that the school's insufficient investigation was actionable under § 1983 because "[t]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of injury to life, liberty or property"). For the reasons discussed, summary judgment is proper.

## C.    State Law Claims

Plaintiff asserts state law claims of assault and intentional/negligent infliction of emotional distress as well as a variety of claims pursuant to the Mississippi Constitution, analogous to her federal constitutional claims. Plaintiff's claims against Municipal Defendant are properly dismissed pursuant to the provisions and statutory exemptions of the Mississippi Tort Claims Act ("MTCA"). The MTCA provides the "exclusive remedy" for a party seeking to recover damages for injuries allegedly caused by a governmental entity or its employees' acts or

omissions.  Miss. Code Ann § 11–46–7; *City of Tupelo v. Martin*, 747 So.2d 822, 826 (Miss. 1999); *City of Jackson v. Sutton*, 797 So.2d 977 (Miss. 2001) (MTCA only vehicle for constitutional claims against municipality and/or its employees).

### 1.   Plaintiff's Claims Against Municipal Defendant are Properly Dismissed Pursuant to the MTCA Because Michael Kingdom Was Acting Outside the Course and Scope of his Employment

In her Complaint, Plaintiff seeks damages against Municipal Defendant because of "Michael Kingdom's unlawful sexual harassment and assault on Plaintiff."[98] and in her deposition, Plaintiff testified that she considered Kingdom's conduct, including touching her arm, to be a criminal act.[99]  *See also* Miss. Code Ann. § 97-3-7 (Simple assault; aggravated assault; simple domestic violence; aggravated domestic violence).  She brought a complaint against Kingdom with the Humphreys County Sheriff's Department, and testified that she wanted and expected Kingdom to be arrested on criminal charges.[100]  The language of the MTCA clearly provides that an "employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable" for the conduct of its employees if such conduct constitutes "fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations."  Miss. Code Ann. § 11-46-5(2); Miss. Code Ann. §11–46–7(2); *City of Jackson v. Sandifer*, 107 So. 3d 978, 985 (Miss. 2013). As a general proposition, "Mississippi law provides that an activity must be in furtherance of the employer's business to be within the scope and course of employment." *L.T. ex rel. Hollins v. City of Jackson*, 145 F.Supp.2d 750, 757 (S.D. Miss. 2000) *aff'd*, 245 F.3d 790 (5th Cir. 2000).

In this instance, Kingdom was acting outside the course and scope of his employment with the Town of Isola for purposes of the MTCA as to both the criminal conduct alleged by

---

[98] See Exhibit "A" at ¶ 17 (Complaint).
[99] See Young Deposition at 47.
[100] See Young Deposition at 72-73.

Plaintiff as well as the sexual harassment. In regard to the allegation of criminal activity by Kingdom, the Northern District of Mississippi recently held in *Nelson v. Sparks*, 2016 WL 55350 (N.D. Miss. Jan. 4, 2016) that when a plaintiff alleges "conduct rising to the level of a crime", it is "*per se* beyond the course and scope" of a law enforcement officer's employment for purposes of the MTCA. *Id.* at *3. *See also Hollins*, 145 F.Supp.2d at 757-58. (conduct by police officer constituting sexual battery precluded liability against city under the MTCA). Likewise, an act of sexual harassment also is outside the course and scope of employment. *See Cockrell v. Pearl River Valley Water Supply District*, 865 So.2d 357, 362 (Miss. 2004) (law enforcement officer was outside the scope of his employment when he made verbal and physical sexual advances toward an arrestee). As noted by the Mississippi Supreme Court, "[t]he Southern District of Mississippi and the Fifth Circuit, applying Mississippi law, have held that sexual misconduct falls outside the course and scope of employment." *Id.*

For the reasons discussed, Plaintiff's state law claims against Municipal Defendant are properly dismissed because Kingdom was acting outside the course and scope of his employment for purposes of liability under the exclusive remedy of the MTCA.

## 2. Municipal Defendant is Exempt from Liability for Discretionary Acts Pursuant to Miss. Code Ann. § 11-46-9(1)(d) and Miss. Code Ann. § 11-46-9(1)(g)

To the extent Plaintiff asserts claims against Municipal Defendant based on the hiring, supervision and retention of Michael Kingdom, there is no liability. The MTCA provides an exemption from liability for a governmental entity "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss. Code Ann. § 11-46-9(1)(d). "A duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof." *Stewart ex rel. Womack v. City of Jackson*, 804 So. 2d 1041, 1048

(Miss. 2002) (citations omitted).  The Mississippi Supreme Court has held the exemption applies to situations involving police officers, such as in the instant case.  *See City of Jackson v. Powell*, 917 So.2d 59, 74 (Miss. 2005) ("The manner in which a police department supervises, disciplines and regulates its police officers is a discretionary function of the government and thus the city is immune to suit under § 11–46–9(1)(d).").  Pursuant to MISS. CODE ANN. § 11-46-9(1)(g), municipalities are entitled to the same immunity for the discretionary act of hiring city employees.  *See Bell v. Mississippi Dep't of Human Servs.*, 126 So. 3d 999, 1004 (Miss. Ct. App. 2013) ([U]nder [MISS.CODE ANN. § 11–46–9(1)(g)] of the MTCA, governmental entities are afforded immunity for acts arising out of the exercise of discretion in the hiring of personnel.")

## IV. CONCLUSION

For all the reasons discussed herein, Municipal Defendant respectfully requests the Court grant Summary Judgment as to all claims asserted against Municipal Defendant and that all costs of this action be assessed to Plaintiff including all attorney's fees incurred by Municipal Defendant in this litigation

PD.19576399.1

THIS, the 12th day of July, 2016.

Respectfully submitted,

**PHELPS DUNBAR, LLP**


BY:  /s/ Mark Fijman
     Gary E. Friedman, MB #5532
     Mark Fijman, MB #99153
     4270 I-55 North
     Jackson, Mississippi 39211-6391
     Post Office Box 16114
     Jackson, Mississippi  39236-6114
     Telephone: 601-352-2300
     Telecopier: 601-360-9777
     Email:  friedmag@phelps.com
            fijmanm@phelps.com

**ATTORNEYS FOR MUNICIPAL
DEFENDANT ISOLA, MISSISSIPPI**

- 27 -

## CERTIFICATE OF SERVICE

I, MARK FIJMAN, do hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following counsel of record:

Bradford J. Blackmon
Edward Blackmon, Jr.
Janessa E. Blackmon
Marcus Amir Williams
BLACKMON & BLACKMON, PLLC
Post Office Drawer 105
Canton, MS 39046
(601) 859-1567
bjblackmon@blackmonlawfirm.com
edblackmon@blackmonlawfirm.com
jeblackmon@blackmonlawfirm.com
mwilliams@blackmonlawfirm.com

***ATTORNEYS FOR PLAINTIFF***

SO CERTIFIED, this the 12th day of July, 2016.

/s/ Mark Fijman
MARK FIJMAN

PD.19576399.1